### R. W. VADEN v. THE STATE.

No. 3910.   Decided December 18, 1907.

**1.—Murder in Second Degree—Dying Declarations—Predicate.**

Before dying declarations can be introduced in evidence it should appear that they were based upon proper predicate.

**2.—Same—Argument of Counsel—Bill of Exceptions by Bystanders—Allusion to Defendant's Failure to Testify.**

Where upon trial for murder the defendant's counsel excepted to the argument of State's counsel to the effect that defendant remained silent and relied on his witness that the killing was accidental, and there arose a difference of opinion between the court and counsel as to the language used by State's counsel, and the court refused to give defendant his bill of exceptions, whereupon defendant's counsel prepared a bill of exceptions by a bystander, which bore out his contention, the same will be considered on appeal, and the language of State's counsel being an allusion to the defendant's failure to testify, the same was reversible error.

**3.—Same—Practice on Appeal—Statement of District Attorney.**

Where the controverting statement of the district attorney made under oath against defendant's motion for a new trial, was attached thereto, but not embodied in defendant's bill of exceptions by bystanders, and there was no further issue made on the motion for new trial, the bystander's bill of exceptions must be considered on appeal.

Appeal from the District Court of Jones. Tried below before the Hon. Cullen C. Higgins.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

From the State's testimony it appears that the defendant was the father of the deceased; that the deceased lived in a tent with his wife on defendant's place; that the homicide occurred some little distance from the tent; that the wife of the deceased saw deceased leading a mare down to a water pool near defendant's horse lot, and tied the animal to the fence; that shortly after the deceased left with the mare, the defendant started from his home and got to the water pool before the deceased got there; that he passed right by the tent and was talking to himself, saying that he was going to kill the mare if the deceased didn't carry her back to the lot; that he was cursing; that witness did not remember the words; that defendant had a gun in his hand; that witness did not see the parties meet; that she heard some more talking where the parties were, but could not say what they were saying, but she heard them talking; that she did not hear the gun fire but saw that her husband was shot; that the defendant was standing close by with the gun; that she didn't see defendant strike deceased; that she ran to deceased a short distance from the tent as he was coming towards the tent; that when she met him he said, "Dollie, he's fixed me"; that defendant was then within four or five yards of where witness and her husband were; witness asked him (deceased) did he (defendant) shoot him, and he (deceased) said he (defendant) had; that deceased was shot in the head; that when she started with him to the tent he stopped and met his father and shook hands with him, saying, "Pa, let's shake hands" and turned and met him; that defendant was talking to deceased and was cursing after he shook hands with deceased; that deceased said he was going to die and wanted something to ease him. That deceased died six or eight hours afterward.

There was also some evidence with reference to ill feeling between the parties, which originated from a joke that the son had perpetrated upon the father, and which angered the latter. The defendant claimed that

the killing was accidental. This with the statement in the opinion is a sufficient statement of the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree. There were twelve bills of exception reserved, to various rulings and the charge of the court. One of the bills was reserved to the introduction of some statements, made by the deceased on the night following the shooting in the afternoon and perhaps a couple of days before death resulted. The testimony is in rather a questionable shape, if sought to be used as a dying declaration and we are of opinion, as presented, that it is doubtful if it could be used as a dying declaration. If upon another trial it is sought to be used from this standpoint, it ought to be made to appear more clearly that the statement of the deceased is brought within the predicate required by our statute for the introduction of this character of testimony. There is one bill of exceptions, however, that we believe requires a reversal of the judgment, and the matters perpetuated grow out of the speech of counsel for the prosecution in which it is stated that the district attorney, making the closing argument, used the following language: "The defendant said when he came back to the tent after the killing that it was an accident, and now brings the witness, Barker, into court and testifies for defendant on self-defense, and the defendant sits back and says nothing." The court declined to approve this bill as written by appellant's counsel, because the district attorney did not use the language imputed and filed a bill in which he makes it appear the following was the language: "Gentlemen of the jury, the defendant in this case has placed the witness, Barker, on the stand in his behalf and who attempts to show a case of self-defense, and the defendant remains silent until he got to the tent and had laid down on the grass after the killing and stated that it was an accident." Appellant refused to accept this bill and proved up his bill by bystanders. Evidence in the form of affidavits was introduced and made a part of this bill. Among others was A. L. Hollums, who was on the jury that tried appellant, and he swears that the district attorney used the following language: "The defendant said, when he came back to the tent after the killing, that it was an accident, and now he brings the witness Barker into court and testifies for defendant on self-defense, and yet the defendant sits back and says nothing. Or words to that effect. I am sure that said Hopson, district attorney, referred to the failure of the defendant to testify and I noticed that Judge Thomas spoke to Judge Higgins at the time he did so." John B. Thomas states in his affidavit that he was of counsel for appellant and the district attorney, Mr. Hopson, in making his closing remarks, said to the jury: "When the defendant was down at the tent after the killing, he said that the killing was an accident, and now he brings witnesses, who claim to be

eyewitnesses, and claims in the testimony in his behalf that it was self-defense, and the defendant sets back and says nothing." Affiant further says, "This is as near what Mr. Hopson said as I could recollect it, and I got up at once and called the attention of the court to the matter and took exceptions, and the court stated to me that he was not paying attention to the district attorney and did not hear the remark." He further states that the court had made a rule that counsel should not interrupt each other while speaking, but should quietly state their objections to the court, and assigns this as a reason that he did not interrupt the attorney at the time of the imputed remark. S. G. Castles files an affidavit in which he states that he was one of the jurors that tried appellant and that when the district attorney, Hopson, was closing his case for the State in his argument he said: "Mr. Barker, an eyewitness, comes on the stand and testifies, and the defendant sits back and says nothing." He further states that he was under the impression that the attorney for the State did not have the right to refer to the fact that the defendant was not placed on the witness stand, and that that was the reason it was impressed on his mind. C. Spurling files an affidavit in which he says that he was one of the jurors that tried appellant, and when the district attorney was making his closing argument to the jury he used the following language: "The defendant said, when he came back to the tent after the killing, that it was an accident, and now he brings the witness, Barker, into court and testifies for defendant in self-defense and the defendant sits back and says nothing." This is a bill of exceptions.

On motion for new trial the district attorney, under oath files a controverting answer to the effect that the language that he used, instead of that set out in appellant's bill of exceptions number 12, was as follows: "Gentlemen of the jury, the defendant in this case has placed the witness, Barker, on the stand in his behalf and who attempts to show a case of self-defense and the defendant remained silent until he got to the tent and had laid down on the grass after the killing, and stated that it was an accident." This controverting statement of the district attorney was not embodied in the bill of exceptions but was attached to the motion for a new trial. In testing the matter, the evidence in regard to the matter perpetuated in the bill of exceptions, was by affidavits and all of these were put in the bill by the appellant. At the time the bill was rejected by the court and proved up by the bystanders, controverting the bill signed by the court, there was no evidence, nor was the matter further investigated, nor was there any separate issue so far as the motion for a new trial is concerned, made, further than that in the motion for a new trial appellant set up this as a ground of said motion, and the State controverted it by the statement of the district attorney above mentioned.

As this matter is presented, we are of opinion that the bystanders' bill of exception prepared by appellant should be considered. It is further made to appear by evidence sufficiently strong and cogent to show that the district attorney referred to the failure of appellant to testify in his own behalf. Where there is an issue of this sort, the statute provides

that affidavits may be introduced in regard to the matter.  Appellant introduced these affidavits and the bill is thus perpetuated.  In the statement of facts the evidence of the district attorney in regard to the matter is included, which is practically the same as in his controverting statement.  There is also evidence of the witnesses contained in the statement of facts in regard to the matter, sustaining the bystanders' bill as being correct.  We are of opinion, as the matter is presented, the bystanders' bill should be considered and that being so, the judgment must be reversed because of the reference by the district attorney to the defendant's failure to testify.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Henderson, Judge, absent.